# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 00-3637

_____

Daniel Luciano,                            *
                                           *
              Appellant,                    *
                                           *   Appeal from the United States
        v.                                 *   District Court for the
                                           *   District of Nebraska.
Monfort, Inc., a foreign corporation       *
registered to do business in Nebraska,     *
                                           *
              Appellee.                     *

_____

Submitted:  June 13, 2001

Filed:  August 1, 2001
_____

Before MURPHY, HEANEY and BEAM, Circuit Judges.
_____

HEANEY, Circuit Judge.

        Daniel Luciano appeals from an order of the district court granting summary judgment in favor of Monfort, Inc., and denying Luciano's retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000(e)-2000(e)-17.  The district

court[1] determined that Luciano had not provided any evidence indicating that the non-discriminatory reasons given for his termination were pretextual. We affirm.

## I. BACKGROUND

Luciano, a Native American, was employed by Monfort from January 1998 through May 12, 1992. After Luciano's employment with Monfort was terminated, he filed a charge of national origin discrimination on May 20, 1992, with the Nebraska Equal Opportunity Commission and the Equal Employment Opportunity Commission. The discrimination charge was settled out of court for $50,000.

On December 15, 1996, Luciano was hired by Excel Corp., a meat packing facility. As an employee of Excel, Luciano held the position of "cattle pusher" and was responsible for releasing cattle from the pens to the kill floor for slaughter. The United States Department of Agriculture (USDA) directs that cattle must be inspected by a veterinarian before they are slaughtered. Employees working as cattle pushers are given a "lineup card" that assists them in determining which cattle have been properly inspected and can be released to the kill floor. In the event that the wrong cattle reach the kill floor, the USDA can shut down the production line and impose federal criminal penalties.

On March 4, 1997, Luciano was issued a written warning by Excel's general foreman after Luciano released cattle onto the kill floor that had not been inspected and were not listed on the lineup card. The written warning stated that any further incidents would result in disciplinary action "up to and including discharge." On March 12, 1997, while training a new employee, Luciano again released the wrong cattle onto the kill floor. As a result, the USDA shut down Excel's production line causing the

---

[1] The Honorable Richard G. Kopf, United States District Judge for the District of Nebraska.

company to lose approximately $15,000. After this second incident, Excel terminated Luciano for failing to discharge the duties of his job properly.

A few weeks prior to Luciano's March 12, 1997 termination from Excel, several Monfort employees visited the Excel plant to view the operations in the recently renovated kill floor. Hoot "Harley" Thomas, the superintendent of Monfort's slaughter division, was one of the Monfort employees that attended the tour.

Rick Luebbe, a former Monfort employee, testified in his deposition that he toured the Excel plant with Thomas. Luebbe testified that while at Excel, "Hoot mentioned to me that [Luciano] screwed over Monfort and he was going to see what he could do to make sure that didn't happen here." At the end of the tour, Thomas told Luebbe and the other Monfort employees to wait in the lunchroom while he went to talk some Excel employees. Thomas and Excel employees, however, deny that comments about Luciano were made or that Luciano's name was ever mentioned in their conversations.

Afer his termination, Luciano filed charges against Monfort for unlawful retaliation under Title VII, alleging that he was terminated from Excel as a result of comments Thomas made to Excel employees at the conclusion Monfort's tour of Excel. The district court granted summary judgment in favor of Monfort, concluding that Luciano failed to demonstrate a submissible issue of fact existed with respect to his termination and that only through engaging in speculation and conjecture could a jury possibly find, based upon the evidence presented, that the reason given by Excel was pretextual. Luciano now appeals the district court's ruling.

## II. DISCUSSION

We review the district court's order granting summary judgment de novo, viewing the evidence and the inferences drawn from the evidence in the light most

3

favorable to the nonmoving party, to ensure "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see Smith v. Ashland, Inc., 250 F.3d 1167, 1171 (8th Cir. 2001). In reviewing this case, we bear in mind that summary judgment should be used sparingly in employment discrimination cases. See Chock v. Northwest Airlines, Inc., 113 F.3d 861, 862 (8th Cir. 1997).

On appeal, Luciano argues that the district court applied the wrong standard of proof to the facts of the case, incorrectly shifting the burden back to him. In addition, the appellant argues that the district court erred in finding that no genuine issue of material fact existed with regard to the issue of pretext.

## A. Direct Evidence Analysis

We first address the question of whether the district court erred in applying the burden shifting scheme of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), rather than a  direct evidence analysis under Price Waterhouse v. Hopkins, 490 U.S. 228 (1989).

> To be entitled to a direct evidence analysis, the plaintiff must present evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude sufficient to permit the factfinder to infer that that attitude was more likely that not a motivating factor in the employer's decision.

Rivers-Frison v. Southeast Missouri Community Treatment Ctr., 133 F.3d 616, 619 (8th Cir. 1998) (internal quotation omitted).

Luciano argues that the remarks allegedly made by Thomas, combined with Thomas' subsequent closed door meeting with Excel employees, constitutes evidence

4

that retaliation was a motivating factor in terminating Luciano from Excel, entitling him to a direct evidence analysis. Thomas, however, had no decision-making authority at Excel. This court has "carefully distinguished between comments which demonstrate a discriminatory animus in the decisional process or those uttered by individuals closely involved in employment decisions, from stray remarks in the work place, statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process." Id. (internal quotations omitted). Without any evidence indicating that Thomas was a decisionmaker and involved in the decisional process that resulted in Luciano's termination, his statements are insufficient to form the basis for a direct evidence analysis. Therefore, the district court properly applied McDonnell Douglas rather than a direct evidence analysis.

## B. Indirect Evidence Analysis

We now turn to the question of whether the district court erred in granting summary judgment to Monfort on the basis that Luciano had failed to produce any evidence of pretext. To establish a prima facie case of retaliatory discrimination under Title VII, Luciano must show (1) he engaged in statutorily protected activity, (2) an adverse employment action was taken against him, and (3) a causal connection between the two events. See Basset v. City of Minneapolis, 211 F.3d 1097, 1104-05 (8th Cir. 2000). The district court determined that Luciano established a prima facie case, based on Luciano's discrimination charge against Monfort and the fact that he was terminated from Excel. We agree with the district court that Luciano established a prima facie case of retaliation. Under the McDonnell Douglas analysis,

> once the plaintiff establishes a prima facie case of retaliation, the burden shifts to the employer to produce some legitimate, non-discriminatory reason for the adverse action. If the employer satisfies this burden, the plaintiff must prove the proffered reason is a pretext for retaliation.

5

Ultimately, the plaintiff must establish the employer's adverse action was based on intentional discrimination.

Buettner v. Arch Coal Sales Co., Inc., 216 F.3d 707, 714 (8th Cir. 2000).

There is undisputed evidence that Excel had good reason for discharging Luciano. Luciano was responsible for the wrong cattle being released onto the kill floor twice within a matter of eight days. These incidents were serious violations of the USDA's policies on slaughtering of cattle. Violations of the USDA's regulations can result in a plant being shutdown and substantial fines. Following the second incident for which Luciano was responsible, the meat packing plant was shut down for a period of time, resulting in a $15,000 loss in production time.

In order to explain his lapses in job performance on these two occasions, Luciano argues that he was part of a "set-up" by Excel. Luciano asserts that on March 4, he was given the wrong lineup card for his shift, which made it impossible for him to release the correct cattle onto the kill floor, and that on March 12 he was told by his supervisors not to give the employee he was training a lineup card, which resulted in the trainee releasing the wrong cattle. Both of these incidents, he argues, were part of the set-up and were designed to provide Excel with a non-discriminatory basis to terminate him. "We have described general statements in affidavits and deposition testimony similar to [Luciano's claims] as conclusory and have determined that such statements, standing alone, are insufficient to withstand a properly-supported motion for summary judgment." Helfter v. United Parcel Service, Inc., 115 F.3d 613, 616 (8th Cir. 1997). The claims by Luciano are conclusory and supported by no probative evidence. Only through intense speculation and conjecture could a jury find Luciano's account credible.

6

## III. Conclusion

For the forgoing reasons, we affirm the district court's summary judgment in favor of Monfort.

A true copy.

Attest.

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.